United States District Court
Southern District of Texas
**ENTERED**
March 31, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOE MURPHY, ET AL., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-00167 |
| | § | |
| CITY OF GALVESTON, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

This case has more twists and turns than a cheap garden hose. Plaintiffs Joe Murphy ("Murphy"), Yoram Ben-Amram ("Ben-Amram"), and Galtex Development, LLC ("Galtex") (collectively, "Plaintiffs") originally sued the City of Galveston (the "City") back in 2012, claiming that the City took their property without just compensation in violation of the Texas and United States Constitutions. The case started in state court, was removed to federal court, remanded to state court where it bounced between the state district court and the state appellate courts for a number of years, and now here it is. Back in federal court.

Pending before me is the City's motion for summary judgment. *See* Dkt. 54. The City argues that I lack subject matter jurisdiction over the case because Plaintiffs' takings claims under the United States Constitution are not ripe for adjudication. Having reviewed the motion, responsive briefing, and applicable law, I agree.

## BACKGROUND

The property at issue consists of two buildings—one built in 1910 and the other built sometime between 1955 and 1965—located in Galveston, Texas, on Sealy Street in the East End Historical District (the "Property"). Ben-Amram d/b/a Galtex purchased the Property in March 2007, subject to a mortgage held by Murphy. The Property contains 14 separate residential rental units.

Zoning standards in the East End Historical District prohibit multifamily dwellings. Nevertheless, because the Property pre-dated the existence of the East End Historical District and zoning standards, it enjoyed a "legally non-conforming" or "grandfather" status as a multifamily dwelling. To keep this status, zoning standards prohibited the Property from remaining vacant for more than six months. *See* GALVESTON, TEX., ZONING STANDARDS § 29-111(a)(4) (1991) ("A NON-CONFORMING STATUS SHALL EXIST . . . [w]hen a multi-family residential use in the Historic District was in existence at the time of adoption of these Zoning Standards, . . . provided, that there has not been a discontinuance of actual occupancy as a multiple-family use for any consecutive period of time of six (6) months or longer.").[1] Up until the events relating to this lawsuit, the Property had always complied with this occupancy requirement.

In September 2008, Hurricane Ike hit the City hard, causing significant damage to the Property. Roughly five months later, in January 2009, the City

---

[1] The City attached §§ 29-111 and 29-112 of the Galveston Zoning Standards to its motion. *See* Dkt. 55-1 at 8–9.

condemned the Property as unfit for human habitation. At the City's direction, the tenants vacated the buildings. The City then informed Ben-Amram of those improvements needed to comply with the International Property Maintenance Code of the City. The improvements were grouped in seven categories: (1) plumbing and base requirement and facilities; (2) exterior and interior; (3) light and ventilation; (4) dwelling space requirements; (5) electrical systems; (6) nuisances; and (7) sanitation. Ben-Amram indicated that he intended to bring the Property up to code, and he pulled the required permits and began renovations.

In January 2010, City inspectors indicated that the condemnation would be lifted if various code items were completed and Ben-Amram submitted a letter from a certified engineer attesting to the Property's safety. Over the next few months, Ben-Amram and City officials met numerous times to discuss the renovations.

In May 2010, after the Property had been unoccupied for 16 months, a City Code Enforcement Officer notified Ben-Amram that the Property had lost its grandfather status because it had been unoccupied for more than six months. The notice informed Ben-Amram that he could apply for a Special Use Permit ("SUP") to allow the Property to operate as a multifamily dwelling. The City's zoning standards also gave Ben-Amram the option to appeal the Code Enforcement Officer's decision to the Zoning Board of Adjustments (the "Board"). *See* ZONING STANDARDS § 29-112(c) ("Appeals to the Board can be taken by any person

aggrieved or by an officer, department or board of the municipality affected by any decision of the Building Official."). Ben-Amram never exercised his right to appeal.

Ben-Amram did file an SUP application with the City in December 2010. After reviewing the SUP application in public meetings, both the Landmark Commission and the Planning Commission recommended that the SUP application be denied. Taking the opposite side, City staff recommended that the SUP be approved, subject to Ben-Amram satisfying specified conditions, including meeting all compliance requirements necessary to lift the condemnation, repairing the compromised exterior siding, and providing more parking spaces or requesting a variance.

Ben-Amram's request for an SUP came before the Galveston City Council on February 10, 2011. During the meeting, City Council heard from Ben-Amram, various neighbors who were opposed to granting an SUP, and Ron Penn ("Penn"), the field supervisor in the City's Code Enforcement Division. Penn confirmed that the Property did not conform to the applicable codes, that there were ongoing safety concerns associated with the Property, and that Ben-Amram had not produced the requested engineer's letter certifying that the building was structurally sound and safe.[2] After discussion, City Council denied the SUP

---

[2] As of the City Council hearing, the Property still had multiple problems that could pose a health and safety hazard to intended occupants, including no smoke detectors in second floor rooms, untreated mold in the walls, broken windows, a flooded breaker panel, a carport ceiling that was falling down, disintegrating interior paneling, cracked and falling exterior brick work, rotten wood in the walls and columns, and exposed electrical wires.

application. Despite the vote, various City Council members encouraged Ben-Amran to complete the necessary repairs, obtain the engineer's letter, and re-apply for the SUP after working with the City's Planning Department to bring the Property up to code. Mayor Joe Jaworski pointed out to Ben-Amram that there was no prohibition against him reapplying for an SUP "with even a slight tweak." Dkt. 55-3 at 84. Ben-Amram did not take this advice. He never re-applied for the SUP. He also never produced the engineer's report certifying the structural safety of the building. Murphy foreclosed on the Property in October 2011.

In April 2012, Plaintiffs filed suit against the City in state court, alleging that the City took their property without just compensation in violation of the Texas and United States Constitutions. In June 2012, the City removed the case to federal court. In August 2013, the federal court remanded Plaintiffs' state taking claims to state court for determination and stayed the federal claims pending exhaustion of Plaintiffs' state court remedies. It took a while, but Plaintiffs pursued their state takings claims to conclusion in Texas courts. *See City of Galveston v. Murphy*, 533 S.W.3d 355, 365 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that trial court lacked subject matter jurisdiction over Plaintiffs' regulatory taking claims regarding the denial of the SUP); *Murphy v. City of Galveston*, 557 S.W.3d 235, 245 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (affirming trial court's order dismissing Plaintiffs' Texas takings claim regarding the loss of grandfather protection because the Plaintiffs failed to exhaust their administrative remedies).

With the state takings claims resolved in their entirety, this case was reinstated on the active federal docket in January 2020 so that the federal takings claims could be addressed.[3] Soon thereafter, the City moved for summary judgment, arguing that this Court lacks subject matter jurisdiction over Plaintiffs' federal takings claims.

## LEGAL STANDARD

The proper vehicle to challenge a court's subject matter jurisdiction is a Rule 12(b)(1) motion to dismiss, not a Rule 56 motion for summary judgment. *See Stanley v. Cent. Intel. Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981). Although the City filed a motion for summary judgment in this case, I am permitted to construe that motion as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See United States v. One 1988 Dodge Pickup*, 959 F.2d 37, 39 (5th Cir. 1992) ("[I]t is clear that the proper characterization of the motion for these purposes is not determined by the label that the motion bears."); *Ysleta Del Sur Pueblo v. City of El Paso*, 433 F. Supp. 3d 1020, 1023–24 (W.D. Tex. 2020) (construing a motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction); *Med. Components, Inc. v. Osiris Med., Inc.*, 226 F. Supp. 3d 753, 760 (W.D. Tex. 2016) (same).

---

[3] Although Plaintiffs' original 2012 lawsuit contained both federal takings claims and state takings claims, Plaintiffs readily acknowledge that the state law takings claims have been resolved through the appellate proceedings in the state court system. As such, I need not address the state law takings claims in this opinion.

In considering a Rule 12(b)(1) motion, I must keep in mind that "[f]ederal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation omitted).

When subject matter jurisdiction is challenged, "the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The party asserting jurisdiction always bears the burden of proof that jurisdiction does in fact exist. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## DISCUSSION

The Takings Clause of the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. CONST. amend. V. That prohibition against unlawful government takings is applicable to the states by virtue of the Fourteenth Amendment. *See Chicago, B & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 235–42 (1897). Before addressing the merits of a takings claim, a federal court must determine whether the claim is ripe for judicial review. *See Urban Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006). If the claim is not ripe, it must be dismissed for lack of subject matter jurisdiction.

*See id.* ("Ripeness is a question of law that implicates this court's subject matter jurisdiction."); *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) ("Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable.").

In *Williamson County*, the Supreme Court established a two-prong test for evaluating ripeness under the Fifth Amendment's Takings Clause, explaining that such claims are not ripe until: (1) the relevant governmental unit has reached a final decision as to what will be done with the property; and (2) the property owner has sought compensation for the alleged taking through whatever adequate procedures the state provides. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985). Two years ago, the Supreme Court overruled *Williamson County*'s second prong, the state-exhaustion requirement. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167–68 (2019). Important here, the *Knick* court noted that it "does not question the validity of th[e] finality requirement." *Id.* at 2169. Thus, a federal regulatory taking claim is ripe for judicial review in federal court only if the challenged governmental conduct is a final decision. *See DM Arbor Ct. Ltd. v. City of Houston*, 988 F.3d 215, 218 n.2 (5th Cir. 2021) (recognizing that although *Knick* eliminated the state-exhaustion requirement, "it did not alter the requirement for a final decision from the regulator before any litigation is commenced"); *Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560, at *9 (E.D. La. Mar. 30, 2020) ("[A] Takings Clause claim is ripe for judicial review when the governmental unit has

8

reached a final decision."). Governmental conduct is final if it demonstrates "a final, definitive position regarding how [the government] will apply the regulations at issue to the particular land in question." *Urban Devs.*, 468 F.3d at 293 (quoting *Williamson Cnty.*, 473 U.S. at 191).

"[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson Cnty.*, 473 U.S. at 193. The Fifth Circuit has declared that "whenever the property owner has ignored or abandoned some relevant form of review or relief, such that the takings decision cannot be said to be final, the takings claim should be dismissed as unripe." *Urban Devs.*, 468 F.3d at 293. As detailed below, Plaintiffs have failed to establish that the City arrived at a final, definitive position with respect to the SUP application and the revocation of the Property's protected grandfather status. Because Plaintiffs have failed to demonstrate finality, their claims are not ripe for judicial review. This case must be dismissed for a lack of subject matter jurisdiction.

## A. The City's Denial of the SUP was Not Final Because Plaintiffs Could Have Re-applied for the SUP.

The City argues that Plaintiffs never obtained a final, conclusive decision from the appropriate regulatory authority because the Plaintiffs could have corrected problems identified by City Officials and reapplied for the SUP.[4] I agree.

---

[4] The City also argues that this takings claim is unripe because Plaintiffs neglected to pursue viable alternative uses of the Property. Because I find that Plaintiffs' takings claim based on the denial of the SUP is unripe due to Plaintiffs' failure to reapply, I need not

Without a final decision, the Plaintiffs' takings claim is not ripe, and I do not have jurisdiction.

The record is crystal clear. The City never reached an official and final decision as to whether it would issue an SUP to Plaintiffs. At the time City Council initially voted down the SUP application, City officials pointed out numerous issues they had with the Property that Plaintiffs could have resolved before reapplying for the SUP. The transcript of the City Council hearing reveals that City officials encouraged Ben-Amram to bring the Property up to code, acquire the engineer's letter, and then reapply for the SUP. Several City Council members stated that they were denying the SUP over concerns about the safety of the building and the health of its future occupants, suggesting that an SUP would be granted were it not for those concerns.[5] After the City rejected the SUP application, Plaintiffs chose to bring this lawsuit instead of bringing the Property into compliance with applicable code and then resubmitting an SUP application reflecting completion of the repairs.

_____

reach the question of whether Plaintiffs could have pursued alternative uses for the Property.

[5] Multiple councilmembers expressed particular reservations with granting the SUP. Councilmember Gonzales cited public safety concerns and the Property's failure to meet code requirements. Councilmember Colbert also cited public safety concerns, code violations, and the lack of the engineer's letter. Councilmember Greenberg indicated there were too many things wrong with the Property for him to support the SUP, including infrastructure and engineering concerns. Councilmembers Gonzales and Greenberg both discussed reconsidering the SUP application when all or substantially all of the repairs to the Property were completed.

Plaintiffs complain that the City "insist[ed] on diminished occupancy—destroying units to provide parking or 'green space'—as the price for" obtaining an SUP. Dkt. 59 at 56. As an initial point, the City takes issue with Plaintiffs' characterization of the parking state of affairs, noting that the City never required Ben-Amram to obtain additional parking to obtain an SUP. City staff originally recommended that Ben-Amram's request for an SUP be approved on the condition that he "provide 16 off-street parking spaces . . . *or* seek a variance from the [Board]." *See* Dkt. 55-2 at 68 (emphasis added). If Plaintiffs wish to rely on the parking issue to prove their federal takings claim, they must first show that Ben-Amram requested a variance that the City denied. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 620–21 (2001) (A landowner cannot bring a regulatory takings claim without "first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law."). That request was never made.

Truth be told, Plaintiffs gave up too soon. Although the City initially rejected Plaintiffs' request for an SUP, there was a real possibility that a subsequent SUP application would have been successful if Ben-Amram had applied for a variance with the Board concerning the parking issue, repaired the Property so that it satisfied the code requirements, and provided an engineer's letter. Plaintiffs failed to actively seek a final decision from the City, and that dooms their claim. *See Williamson Cnty.*, 473 U.S. at 193–94 (holding that the governmental unit had not

11

arrived at a final, definitive decision because the plaintiff had not followed the procedure for obtaining variances, "leav[ing] open the possibility that [the plaintiff] may [have acquired relief] after obtaining the variances"). Without a final decision from the City, Plaintiffs' claim for the denial of the SUP claim is not ripe for judicial review. *See Agins v. Tiburon,* 447 U.S. 255, 260 (1980) ("Because the appellants have not submitted a plan for development of their property as the ordinances permit, there is as yet no concrete controversy regarding the application of the specific zoning provisions.").

Plaintiffs acknowledge that they could have submitted another SUP application to the City, but they argue that such efforts would have been futile. Under the futility exception, a plaintiff in a takings case may avoid dismissal on ripeness grounds by establishing the futility of pursuing administrative remedies. *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005) ("A property owner, for example, will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile."); *S&R Dev. Ests., LLC v. Bass*, 588 F. Supp. 2d 452, 463–64 (S.D.N.Y. 2008) ("The futility exception was created to protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved." (quotation omitted)). Although the ripeness doctrine does not require "a futile gesture as a prerequisite for adjudication in federal court," *Williams v. Lambert*, 46 F.3d 1275, 1280 (2d Cir. 1995), conclusory or unsupported allegations of futility

will not suffice. *See 15 Corporations, Inc. v. Denver's Prosecutor's Off.*, No. 13-cv-0251-WJM-MJW, 2013 WL 5781161, at *9 (D. Colo. Oct. 25, 2013) (compiling cases holding that plaintiffs must make a "clear and positive showing of futility" (quotation omitted)). Application of the futility exception is rare, with most courts narrowly limiting the circumstances in which the exception can be applied.

> While the ripeness doctrine does not require litigants to engage in futile gestures such as to jump through a series of hoops, the last of which is certain to find obstructed by a brick wall, the presence of that brick wall must be all but certain for the futility exception to apply. There must be evidence that the relevant government body has no discretion to grant an exemption, or that it has dug in its heels and made clear that all such applications will be denied.

*Country View Ests. @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 150 (E.D.N.Y. 2006) (cleaned up). I can't say whether Plaintiffs encountered a brick wall because they didn't even attempt to jump through the hoop. Plaintiffs never pursued another SUP application, and they haven't shown that filing one would have been pointless. *Cf. Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) (finding a ripe claim because the governmental entity stipulated that a building permit would not have issued "application or no application"). Plaintiffs assert that the SUP would not have been issued upon reapplication, but they have presented no evidence backing up this wild accusation. To the contrary, plenty of evidence suggests that the City was open to issuing a SUP once repairs had been completed so that the Property satisfied all code requirements. As already noted, City Council members encouraged Plaintiffs to reapply once they addressed safety

concerns and obtained the engineer's letter certifying the structural integrity of the buildings. The futility argument fails.

A Fifth Amendment takings claim is not ripe until the relevant governmental unit has reached a final decision. Plaintiffs never obtained a final decision regarding the SUP application, and they have not shown that re-applying for the SUP would have been futile. Their Fifth Amendment takings claim regarding the SUP must be dismissed for lack of subject matter jurisdiction.

## B.   Revoking the Property's Grandfather Status was not Final Because Plaintiffs Could Have Appealed the Decision.

As mentioned previously, the City Code Enforcement Officer revoked the Property's grandfather status in May 2010. Plaintiffs claim that this amounted to an unlawful taking under the Fifth Amendment. The City argues that Plaintiffs' claim is not ripe for judicial review because Plaintiffs could have appealed the City Code Enforcement Officer's May 2010 decision to the Board. I agree.

Chapter 211 of the Texas Local Government Code and the City's zoning standards expressly provide that any "person aggrieved" by a decision made by an administrative officer may pursue an administrative appeal to the Board. TEX. LOC. GOV'T CODE § 211.010; GALVESTON, TEX., ZONING STANDARDS § 29-112(c). The appeal must be taken within a reasonable time after the decision is rendered by the administrative officer. Here, it is undisputed that Plaintiffs never appealed the Code Enforcement Officer's decision to revoke the Property's grandfather status. Instead, Plaintiffs filed the SUP application, which they ultimately failed to pursue

to conclusion. Had Plaintiffs appealed the decision of the Code Enforcement Officer, the Board might have decided that the non-conforming use could continue. But we will never know. Plaintiffs eliminated this possibility by failing to pursue their appellate remedies. Under the finality requirement, a takings claim is "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty.,* 473 U.S. at 186. Because Plaintiffs failed to appeal the administrative decision to the Board, there was no final decision on the matter, and Plaintiffs' claim is not ripe for judicial review. Thus, I have no jurisdiction to hear this claim.

Caught between a rock and a hard place, Plaintiffs argue that their failure to appeal to the Board should be excused because the City did not inform them of their right to appeal. While technically true that the City did not expressly tell Plaintiffs that they could exercise appellate rights, the right to appeal is plainly provided in the City's zoning standards. Moreover, it is well-established that ignorance of the law is no excuse. *See Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n.3 (Tex. 1990) ("In Texas, the law recognizes that there is no duty to inform others of the requirements of the law because all persons are presumed to know the law." (collecting cases)); *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 444 (Tex. App.—Austin 2011, no pet.) ("Ignorance of the law . . . does not constitute good cause for failure to timely request relief provided by statute." (collecting cases)). Plaintiffs respond that the presumption that they should know

15

the law does not apply here because applying it would somehow violate Plaintiffs' right to due process. Plaintiffs place a lot of emphasis on *United States v. Henderson*, 707 F.2d 853 (5th Cir. 1983), a case which dealt with a notice affirmatively misrepresenting the applicable law governing the discharge of a debtor's obligations. But that situation is radically different from the facts of this case. Here, there is no evidence that the City made any misrepresentations. *Cf. id.* at 856–57. The City informed Ben-Amram of his right to apply for an SUP but made no mention one way or the other whether he enjoyed a right to appeal the administrative decision. "Persons residing in, or having dealings with, a city are presumed to know its ordinances," and "persons living within the limits of an incorporated city are charged with notice of its ordinances." *Bd. of Adjustment of San Antonio v. Nelson*, 577 S.W.2d 783, 786 (Tex. Civ. App.—San Antonio 1979, writ ref'd n.r.e.). Thus, the City's failure to inform Ben-Amram of his right to appeal did not violate his due process rights.

In one final push, Plaintiffs argue that they should be excused from filing an appeal to the Board on the grandfather status issue because such an effort would have been futile. As noted, the futility exception requires Plaintiffs to conclusively show that any further attempts to secure relief from the governmental unit would have been fruitless. *See Palazzolo*, 533 U.S. at 625–26. Plaintiffs have made no such showing. Instead, Plaintiffs' arguments rest on pure, unadorned speculation. *See* Dkt. 59 at 60 (arguing that appealing to the Board would have resulted in intolerable delay because, "[e]ven if the [Board] ruled in favor of Ben Amram, the

16

City itself or any 'person aggrieved' *could* appeal the [Board] to the District Court" (emphasis added)). The futility doctrine offers Plaintiffs no relief. Plaintiffs' takings claim for the loss of grandfather status is not ripe, and it must be dismissed. *See Williamson Cnty.*, 473 U.S. 172, 188 (finding that the takings claim based on the application of a zoning ordinance was not ripe because there was "no evidence that respondent applied to the Board of Zoning Appeals for variances from the zoning ordinance").

## CONCLUSION

For the reasons explained above, this Court lacks subject matter jurisdiction over Plaintiffs' takings claims. Accordingly, the City's motion for summary judgment (Dkt. 54), which I am construing as a Rule 12(b)(1) motion, is **GRANTED**. This case is dismissed.

SIGNED this 31st day of March 2021

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE